## Zacheus Flint *v.* Henry Steadman.

### *Deed. Record. Trusts and Trustees. Damages.*

Where a trust is in terms created in a deed, and the object of that trust is designated by the word *heirs* of a person named, but who was then living, the Court will take notice of the *popular sense* in which [the word heirs is used in order to give effect to the trust part of the deed.

Where land was conveyed to Sarah Thayer " in trust for the heirs of Henry G. Thayer to be deeded to them when requested by said Henry G., and to said

heirs, heirs and assigns for ever." Habendum " to said Sarah Thayer in trust for Henry G. Thayer's heirs and their assigns to their own use and behoof for ever." Covenanting " with the said SarahThayer and the *children* of said Henry G. Thayer, their heirs and assigns," it was *held,* that the face of the deed showed that the children of Henry G. Thayer were to be the beneficiaries of the trust.

When a deed is duly recorded, this constitutes notice to all persons subsequently interested in the premises of the true character and state of the title and interest conveyed and created thereby.

Where a grantee of a trust estate, conveyed to him by a deed of warranty, is charged with a knowledge of the existence of the trust, the fact as to whether the trust has been discharged or not, *is mutter in pais* as to him, and he is bound at his peril to ascertain how the fact is, and to show such discharge before he can claim immunity in that respect.

Where the plaintiff in an action for breach of the covenant of seizin had the use of the premises, and held them in a manner to be relieved from accountability for their use, the rule of damages will be the purchase money without interest.

COVENANT. This action was brought on the breach of the covenant of seizin. Plea, *non est factum*, and special pleas on which issue of fact was joined. No question was made under the plea of *non est factum*. Trial by Court, June Term, 1862, PECK, J., presiding.

The several deeds by which the premises in question passed from Joseph Bigelow to the plaintiff, are sufficiently referred to in the opinion of the court; and also a statement of the breach alleged. It appeared that the premises were purchased of said Bigelow for the purpose of furnishing a home for Sarah Thayer and her son, Henry G. Thayer, and the money was furnished by Ephraim Thayer, son of said Sarah, and with the understanding that the title should be put beyond the power of Henry G. to dispose of it ; that said Ephraim was never repaid, nor was any repayment expected ; that Henry G. and his mother went into immediate possession of the premises, and occupied them until they were sold to the defendant. The defendant, when he purchased, went into possession and occupied until he deeded to the plaintiff; and the plaintiff in taking his deed, entered into possession and has enjoyed the premises ever since, and was

still in possession. The Court decided that the plaintiff, on executing a quit claim deed to the defendant with covenants against all claims under him, might have judgment for $250, that being the sum he paid the defendant for the premises; but allowed the plaintiff no interest on the sum paid, he having had the use of the premises since he took his deed. The plaintiff having executed such deed and lodged it with the clerk for the defendant, the Court rendered judgment as above stated,—to which the defendant excepted.

*P. Perrin* and *J. Rowell*, for the defendant.

The deed from Joseph Bigelow to Sarah Thayer must be construed to be to the said Sarah in trust for the heirs of Henry G. Thayer, as is expressed in the granting part and *habendum* of the deed. The covenant to the children of the said Henry cannot control the former expressions. If there are repugnant words or clauses in a contract or deed the first shall be received and the last rejected, unless there is some special reason to the contrary. 1 Swift's Digest 227 ; 2 Hill's Real Prop. 338 and cases cited. In determining this question of construction we may call in aid the subsequent conduct of the parties. *Wheelock* v. *Moulton et al.*, 15 Vt. 519 ; and this we do by the deed of Sarah Thayer and her husband to " the heirs of Henry G. and Sally Thayer, which shows how Sarah Thayer understood the deed. If we are correct in this proposition then we insist that the trust part of the deed is void, and the would-be trustee took both the legal and equitable estate. *Nemo est haeres viventis.* A conveyance to the heirs of one living is void. A use requires a *cestui in esse*, and can not, therefore, take effect if limited to a person not *in esse*. A trust in relation to real estate is a use *not executed by the statute* of uses, and requires a *cestui qui trust in esse* at the time of its creation or it will be void. 2 Hilliard's Real Prop. 351 ; 1 *ib.* 295.

A purchaser *without* notice from one *with* notice is not charged with the trust. So a purchaser *with* notice from one without notice. 1 Hilliard's Real Prop. 341 and cases cited.

We insist that the registry of the trust deed was not a sufficient notice of the trust; and that the doctrine of constructive notice does not apply. 2 N. Y. Digest 922, referring to *Murray* v. *Ballon*, 1 John's Ch. 566; *Champlin* v. *Laytin*, 6 Paige 189, affirmed in 18 Wend. 407; *Harlow* v. *Green*, decided by this court at the last General Term not yet reported.

Again, when the *cestui* is not *sui juris* the trustee may convey the trust estate so as to vest a good title in the purchaser without the consent of the *cestui*. *Pownal* v. *Myers et al.*, 16 Vt. 415, and cases there cited. If the *cestui que trusts* were *sui juris* the case should have shown it, or the presumption is that they were not. The assent of the *cestui* may be either express or implied. This implication may result either from circumstances or lapse of time, or both. *Pownal* v. *Myers et al.*, 16 Vt. 415. The *cestui que trusts*, if there be any, have only an equitable interest and may or may not assert it, and should the plaintiff recover full damages when he has never been disturbed in the least and no prospect of his ever being disturbed? 7 Johns. 358; 12 Mass. 304; 13 Johns. 50; 2 Mass. 433; 4 Mass. 628 and 441; 4 Johns. 1; 14 Mass. 144; 16 Johns. 254.

*J. B. Hutchinson*, for the plaintiff.

" That the grantor is the lawful owner, that he is seized in fee, that he has good right to sell and convey," are synonymous terms. *Marston* v. *Hobbs*, 2 Mass. 433; *Willard* v. *Twitchell*, 1 N. H. 177. The covenant guarantees against the existing right of any third person, which might defeat the estate granted. *Fitch* v. *Baldwin*, 17 John. 161.

Proof of the deed to Sarah Thayer *in trust* for the children, or heirs of Henry G. Thayer, was sufficient to show that the defendant did not have any title to the premises, and was not the owner of them. This deed should be construed according to the intention of the parties to the same, which evidently was to invest the title of the premises in the children of Henry G. Thayer. *Blake and Wife* v. *Stone et al.*, 27 Vt. 575; *Smith et al.* v. *Hastings*, 29 Vt. 240.

The covenants of ownership and seizin, and that the land is

free from incumbrances, are personal covenants not running with the land, and are broken at the execution of the deed. 4 Kent's Com. 471 (555) ; also *Richardson* v. *Dorr*, 5 Vt. 9 ; *Mills* v. *Catlin*, 22 Vt. 98.

It has been held in some of the states that the covenant of seizin was satisfied if the granter was seized *in fact* claiming a fee. But other decisions hold that there must be a *legal* seizin in fee to answer the covenant. This last is the rule of the common law, and seems now to be the settled law in Vermont. *Richardson* v. *Dorr; Mills* v. *Catlin*, cases above cited.

The rule of damages is the consideration paid for the land, and the interest of the money. In this case if the plaintiff is liable over to the children of Henry G. Thayer for the rents and use of the premises, for this reason he is entitled to the interest of his money paid, if nothing more,—cases above cited, also *Marston* v. *Hobbs*, 2 Mass, 433 ; *Bickford* v. *Page*, 2 Mass. 455·

BARRETT, J. The defendant conveyed lands to the plaintiff by deed, March 19, 1855, in which he covenanted that "until the ensealing of such deed he was the sole owner of the premises."

This suit is brought for an alleged breach of said covenant.

It appears that Joseph Bigelow had conveyed said premises in 1848, to Sarah Thayer, "in trust for the heirs of Henry G. Thayer, to be deeded to them when requested by said Henry G. and to said heirs, heirs and assigns forever." *Habendum* "to said Sarah Thayer in trust for Henry G. Thayer's heirs and their assigns, to their own use and behoof forever." Covenanting "with the said Sarah Thayer and the *children* of said Henry G. Thayer, their heirs and assigns."

Said Sarah, the grantor in said trust deed, in 1853 conveyed the premises to Henry G. Thayer by deed of warranty, and said Henry G. and his wife Sally conveyed the same premises to the defendant—by warranty deed—February 1855.

The alleged breach of the defendant's covenant consists in the right and interest of Henry G. Thayer's children in said premises under and by virtue of said deed in trust of Joseph Bigelow to said Sarah.

It appears that said Sarah executed a deed in 1858 to the heirs of Henry G. Thayer and Sally Thayer—her then husband joining her in said deed—which was one of warranty.

It also appears that said Henry G. was the son of said Sarah Thayer.

It is claimed in defence that the trust part of the deed is void, for the reason that there were no *cestuis que trust* in existence— viz, *heirs* of Henry G. Thayer—and this is because Henry G. was then and is still living, and *nemo haeres vivent's*. Under this point it is claimed that the deed shall be construed, as intending heirs, in distinction from children.

It is now to be regarded as the true doctrine of the law, that in construing an instrument of this kind the sense in which the term *heirs* is to be taken, is to be governed by the intention, if manifest on the face of the instrument, or if ambiguous, by the aid of such light as extrinsic circumstances may afford.

In case of inconsistent or doubtful expressions, the construction should be such as that the whole instrument may have effect in accomplishing the purposes and intentions of the parties, rather than that the whole or any part should be rendered nugatory.

Again in passing upon a question of construction, all parts of the instrument are to be taken into account. Acting upon these familiar ideas, in the first place the clear intention is manifest to create a trust, for it is so explicitly expressed,—and that too in favor of somebody competent in law to be so the objects of such trust as to uphold and effectuate it.

The object of that trust is designated by the word *heirs* of said Henry G. Thayer. By the strict technical meaning of that word there could be no such while said Henry G. was living. But by the known popular sense in which that word is used there may be, and of that sense the court will take notice.

It may in that sense mean any persons in existence who by law might take by inheritance from said Henry G. in case of his decease. It then is to be enquired whether the deed itself indicates what persons standing in that relation were intended by the word heirs.

In looking into the covenanting part of the deed, it is found

that the grantor covenants with the grantee in trust, and with the
children of the said Henry G. their heirs and assigns.   This
would seem to render certain what and who was meant by the
term heirs.    And still further to show sufficiently, *prima facie* at
least, that such persons were then in existence, as the objects and
beneficiaries of the trust.

So that standing upon the face of the deed alone a valid
conveyance in trust seems to be established.    This being so, it
would seem that if the defendant would rid himself of the conse-
quences of such a trust estate, the burden would rest on him of
showing affirmatively the lack of persons in existence entitled to
stand as *cestuis que trust.*

Counsel for defendant made the point that in determining this
question of construction they might call in aid the subsequent
conduct of the parties—and this they did by referring to the deed
of said Sarah and her husband to " the heirs of Henry G. and
Sally Thayer."

This expression in that deed instead of favoring the idea of
defendant's counsel in respect to the sense in which the term
*heirs* is used, clearly indicates that it was used to indicate the
children of said Henry G. and Sally—for in order to be the heirs
of *both* it is matter of almost legal necessity that they should be
their children.

But if resort be had to facts outside of the face of the deed,
as it is legitimate to have, in order to aid in a construction
of ambiguous terms and equally to show the existence of the
subject matter to which the deed may be applicable and which is
necessary in order that the deed may have effect, the case fairly
shows that in point of fact children of said Henry G. were in
existence at the time said deed of trust was executed—and the
implication is that they are still continuing to live until the
contrary is shown.

We are therefore compelled to hold that said property became
charged with the trust for the behoof of the children of said H.
G. Thayer, by the deed of said Bigelow to said Sarah Thayer.

It will follow hence, that unless said trust has been discharged

from said premises, or the defendant took conveyance of them in such way as to hold them free of the charge of said trust, he must be chargeable with the effect of such trust charge, upon his covenant of ownership.

The points of defence made on each of these grounds in the argument are properly to be disposed of under a single view.

The deed creating the trust in express terms was duly recorded, and thus constituted notice to all persons subsequently becoming interested in the premises of the true character and state of the title and interest conveyed and created thereby.

This is so familiar a doctrine of the law, and so often asserted and applied in the cases reported, as to render needless any discussion or reference to authority.

This being so, it must be held that the defendant took his conveyance of said premises, charged with notice of the title and interest of the children of Henry G. Thayer therein, and hence took and held his own title in subjection to that title and interest of said children. Hill on Trustees 282; Ib. 509; 2 Story Eq. § 977; *Pownal* v. *Myers et al.*, 16 Vt. 408.

If therefore he would stand relieved of the effect of the title and interest created by said trust deed, it rests on him to show that in point of fact it has been discharged in some way recognized by the law.

The mere fact of a conveyance by the trustee by deed of warranty has no tendency to do that, for such fact predicates no inference that it was done with the assent of the *cestuis que trust.* Indeed being charged with a knowledge of the existence of the trust, whether it has been discharged or not is matter *in pais* as to him, and he is bound at his peril to ascertain how the fact is, and to show such discharge before he can claim immunity in that respect.

The same principle would be applicable if we were to assent to the proposition, that if the *cestuis que trust* were not *sui juris*, the trustee might therefore convey the premises to the grantee without their assent, and he might hold them acquit of the trust. For it would still be incumbent on him to show in such case the

fact that they were not *sui juris*, as well as in the other to show the assent of the *cestuis que trust.*

Neither of which facts is shown in this case.   But in what is thus said, though we regard it conclusive upon the points made in the argument in these respects, we do not wish to leave any ground for supposing that we assent to the doctrine, that a trustee holding a legal trust estate, created in express terms, and for the behoof of certain definite persons and purposes, can by a common deed of warranty, convey the title to a third person, and by reason of the *cestuis que trust* not being *sui juris* relieve the property of the trust charge, and leave the beneficiary to rely on the personal responsibility of the trustee.

Indeed what is said in the books and cases bearing on this proposition, and seeming to give continuance to the idea, has sprung from cases in the courts of equity, and involving questions of the fidelity of parties in conveyances made by them, and of the rights of grantees in such conveyances as affected by the manner in which the interests of such *cestuis que trust* have been secured by such conveyances.   2 Story Eq. 518.   No case at law can be found, we think, in which it has been held that the rights and interests of *cestuis que trust* legally created and manifested in real estate, can be affected by a conveyance of such estate by the trustee, without their assent, any more in the cases of minors *cestuis*, than of persons of full age.

The result of these views is that we hold that there was a breach of the covenant declared on.

The remaining point of exception, is the rule and measure of damages adopted by the county court.   In Sedgwick on Damages p. 176, it is said " The general rule on the covenant of seizin undoubtedly is, that the vendor recovers his consideration money and the interest ; on the ground that this is his actual loss.   But when it is apparent that his loss has been really less, he is limited to the amount of injury sustained."

4 Kent's Com. 475, says " The buyer on the covenant of seizin recovers back the consideration money and interest, and no more. The interest is to countervail the claim for *mesne* profits, to

Flint *v.* Steadman.

which the grantee is liable, and is and ought to be commensurate in point of time with the legal claim to *mesne* profits."

BAYLIES, J., in *Richardson* v. *Dorr*, 5 Vt. 9, says : "The general rule by which to estimate the damages for the breach of this covenant is the consideration paid for the land, and interest, but to this rule there are exceptions."

This has always been in this State regarded as the general rule—and indeed it is not questioned by the defendant's counsel. But they claim that the present case furnishes occasion for modifying its application. The county court did modify it in favor of the defendant by disallowing interest to the plaintiff on the amount of the purchase money paid.

There is ground to doubt the propriety of this modification, if the plaintiff should be regarded as liable to account to the *cestuis que trust* for the *mesne* profits, during his occupancy.

All the hazard of liability in that respect is assumed by the plaintiff, by the covenant in the deed he gave to the defendant, pursuant to the condition imposed by the court upon which the rendering of the judgment in his favor was made dependent.

Obviously the county court regarded that the manner in which the premises had been held and treated would relieve him from accountability ; and so his use of them offset the interest on his purchase money.

We see no occasion in anything developed in the case for making any further modification of the rule.

When the defendant was reinvested with the same title that he had conveyed to the plaintiff by his deed in which the false warranty was contained, and indemnified against liability for *mesne* profits to the persons holding the title that operated the breach of his covenant, during the time the premises were in the use of the plaintiff, it would seem that he had no just ground of complaint.

It seems to us indeed that the condition imposed upon the plaintiff's right to judgment for his purchase money stands upon the extreme verge of the law on this subject, and would give occasion rather to him than to the defendants of questioning the strict legal propriety of the decision made by the county court.

The judgment is affirmed.